Gary L. Leshko (GL - 4146)
LAW OFFICES OF GARY LESHKO
One North Lexington Avenue, 15th Floor
White Plains, NY  10601
(914) 948-6000

Attorney for Defendant,
Workstream, Inc.

H. Robert Fiebach (HF - 5456)
David M. Doret (DD - 2949)
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA  19103
(215) 665-2000

Edward Hayum (EH-8434)
COZEN O'CONNOR
45 Broadway Atrium, Suite 1600
New York, NY  10006
(212) 509-9400

Attorneys for Defendant,
Michael Mullarkey

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATHAN A. LOW AND SUNRISE FOUNDATION TRUST,<br><br>    Plaintiff,<br><br>    v.<br><br>WORKSTREAM, INC. AND MICHAEL MULLARKEY,<br><br>    Defendants. | CASE NO. 07-CV-2917<br><br><br><br><br><br><br><br>Charles L. Brieant, J. |

**MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS, PURSUANT TO
FEDERAL RULES 12(b)(6) AND 12(b)(1), TO DISMISS THE COMPLAINT**

- i -

**TABLE OF CONTENTS**

Page

STATEMENT OF FACTS ............................................................................................................1

ARGUMENT ..................................................................................................................................3

    I.      PLAINTIFFS FAIL TO PLEAD THE CIRCUMSTANCES OF THE ALLEGED SECURITIES FRAUD WITH SUFFICIENT PARTICULARITY. ....................................................................................................3

    II.     PLAINTIFFS HAVE NOT SHOWN SUFFICIENT SCIENTER AS TO MULLARKEY. .............................................................................................................5

           A.     Plaintiffs Have Failed To Allege Motive And Opportunity. ........................7

           B.     There Are No Allegations Sufficient To Constitute Strong Circumstantial Evidence Of Conscious Misbehavior Or Recklessness. ......9

    III.    SUPPLEMENTAL JURISDICTION DOES NOT EXIST TO LITIGATE THE COMMON LAW CLAIMS. ...................................................................................10

CONCLUSION ..............................................................................................................................11

Defendants, Workstream, Inc. ("Workstream") and Michael Mullarkey ("Mullarkey"), hereby move, pursuant to Federal Rules 12(b)(6) and 12(b)(1), to dismiss the Complaint (the "Complaint") of Plaintiffs, Nathan A. Low and Sunrise Foundation Trust (the "Trust") (collectively "Plaintiffs").

## STATEMENT OF FACTS

Plaintiffs commenced this action on April 11, 2007, seeking to recover alleged losses in the amount of $1.1 million on account of the purchase by Low and the Trust of a $2 million package of Workstream common stock and warrants on December 20, 2004. The action is framed in two counts: (1) under Section 10(b) and Rule 10(b)5 of the Securities Exchange Act of 1934 and (2) New York common law.

Named as defendants are Workstream, a publicly held company whose stock trades on the NASDAQ, and Mullarkey, its Chief Executive Officer. The gist of the Complaint is that Mullarkey and Workstream made material misrepresentations to Low, who was acting on his own behalf and on behalf of the Trust (for which he makes all investment decisions, Complaint, ¶ 7). As a result of the alleged misrepresentations, Plaintiffs claim they <u>each</u> purchased 333,334 shares of Workstream common stock and 166,667 warrants to purchase Workstream common stock for a total consideration of $1,000,002.

The Complaint pleads the circumstances of the alleged fraud, and the circumstances which give rise to scienter, with non-existent specificity. Conspicuous by its absence in the Complaint is any particularization of the alleged misrepresentations made to Low and the Trust to induce the purchase of the stock. While the Complaint, ¶¶ 15-19, alleges misrepresentations, it contains absolutely no particularity as to the date, place, time or substance of the communications in which those alleged misrepresentations were made to Low and the Trust.

Likewise, there is no allegation in the Complaint to support an inference of scienter against Mullarkey. The Complaint is utterly devoid of any particularized circumstances that would provide a strong inference of a motive and opportunity for Mullarkey to defraud, deceive or manipulate the Plaintiffs. Nor does the Complaint allege strong circumstantial evidence of conscious misbehavior or recklessness to support scienter.

Rather, the Complaint alleges, in the most conclusory fashion, that Workstream and Mullarkey "had a motive to mislead Plaintiffs" because Workstream needed to have Plaintiffs and others invest money in Workstream in order to close the acquisition of a company called ProAct Technologies Corporation. Complaint, ¶ 28. The Complaint alleges that the total acquisition consideration for ProAct was $9,730,000, with $5,500,000 in cash payable upon closing. Complaint, ¶ 13. Although the Complaint intimates that other investors invested money in Workstream at the time the ProAct acquisition was being made, Complaint, ¶¶ 12, 14, 28, what the Complaint fails to allege is that Workstream raised $14 million in the transaction in which Plaintiffs participated, and that the participation of Plaintiffs amounted to only $2 million (with an additional $2 million coming from Sunrise Equity Partners, L.P. ("Sunrise"), a related entity.[1] In view of the public filing of the Securities and Exchange Commission of the facts relating to this transaction, see Form 8-K attached hereto as Exhibit A, the Court may take judicial notice of the aggregate investment made at the time the Plaintiffs made their investment.

Not only does the Complaint fail to inform the reader that the investment made by Plaintiffs was in the context of a $14 million transaction, the Complaint alleges that Low and the Trust acquired the package of Workstream securities without disclosing that Low had decided to acquire the Workstream securities purchased by Sunrise <u>prior to conversations and analysis on which the Complaint suggests he relied</u>. While not part of the Rule 12(b)(6) record, Low went

---

[1] Sunrise brought a prior suit in September, 2006, based on a virtually identical complaint. The action is pending at 06 CV 7754. Plaintiff Low is one of three principals of Sunrise.

on record as stating that he would buy up to $5 million of securities in the event Sunrise chose not to purchase them. He stated: "Whatever of the $5 million you don't take I will take personally." See e-mail of Low dated December 19, 2004 (Exhibit B).

Jurisdiction is pled under Section 27 of the Securities Exchange Act and 28 U.S.C. § 1331. Plaintiffs invoke the supplemental jurisdiction of the Court under 28 U.S.C. § 1367 with respect to the common law claims arising under New York law.

Against this background, and for the reasons stated below, Defendants move to dismiss, pursuant to Rule 12(b)(6), the Section 10(b) claims on the grounds that the Complaint fails to properly plead the requisites of those claims. At the same time, Defendants move to dismiss, pursuant to Rule 12(b)(1), the state law claims on the grounds that once the federal claims have been dismissed, there exists no supplemental jurisdiction over the claims alleged under New York common law.

## ARGUMENT

Plaintiffs have failed to allege either misrepresentations or scienter with the particularity required. At the same time, without viable federal claims, this Court has no basis to proceed on the state law claims. The Complaint should be dismissed for the reasons stated below.

### I. PLAINTIFFS FAIL TO PLEAD THE CIRCUMSTANCES OF THE ALLEGED SECURITIES FRAUD WITH SUFFICIENT PARTICULARITY.

The Complaint's lack of specificity is striking. The Complaint is wholly inadequate to satisfy the criteria set forth in the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and Rule 9(b) of the Federal Rules of Civil Procedure.

The PSLRA imposes rigorous pleading requirements for plaintiffs alleging that the defendant made an untrue statement of material fact. The PSLRA requires that:

> [T]he complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

15 U.S.C.S. § 78u-4(b)(1) (2006).  In addition, Rule 9(b) clearly requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed.R.Civ.P. 9(b).

The Complaint should be dismissed because it does not meet these rigid pleading requirements.  A complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.  Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004) *citing* Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993).  *See also* In re Prestige Brands Holding, Inc., 2006 WL 2147719, *5 (S.D.N.Y. 2006) (Brieant, J.) (noting that it is well-settled in the Second Circuit that a complaint alleging securities fraud must satisfy the pleading requirements of Rule 9(b)).

The alleged misrepresentations are pled in ¶¶ 15-19 of the Complaint.  Plaintiffs allege that "in late 2004" Plaintiffs and Defendants "entered into discussions" concerning an investment by Plaintiffs in Workstream.  Id. ¶ 13.  However, the Complaint's attempt to plead fraud is wholly inadequate under the PSLRA and the analytical factors laid out in Rombach:

1.  <u>The Complaint fails to allege with particularity even one direct communication with Mr. Low in which fraudulent misrepresentations were made.</u>  While the Complaint, ¶¶ 15-17 and 19, alleges that Workstream had various conversations with Mr. Low, ¶ 15 does not contain specific allegations sufficient to satisfy any of the four Rombach factors; ¶ 16 does not contain specific allegations sufficient to satisfy the third Rombach factor; ¶ 17 does not contain specific allegations sufficient to satisfy the third Rombach factors; and ¶ 19 does not contain specific allegations sufficient to satisfy the third Rombach factor.

2. Instead, where the Complaint makes any attempt to provide particularity, it does so in the context of various communications that took place with Marilyn Adler, one of Mr. Low's colleagues at Sunrise, and <u>then attempts to graft Mr. Low on to those communications without ever alleging his participation</u>. But even as to the paragraphs of the Complaint which allege communications Adler purportedly had with Mullarkey—e.g. Complaint, ¶¶ 18-19—the Complaint fails to satisfy the third requirement of <u>Rombach</u>, namely the specification of where and when the statements were made, <u>as to the purported Adler communications</u>.

The Complaint therefore fails to plead with the requisite specificity any purported fraudulent statements made by Workstream or Mullarkey to the Plaintiffs. If anything, Plaintiffs have pled fraud with *in*specificity. Congress enacted the PSLRA to prevent plaintiffs from advancing precisely the type of vague, unsupported, non-specific allegations in the Complaint. As this Court has noted, "Legislators were motivated by a perceived need to deter suits in which opportunistic private plaintiffs are believed to file securities fraud claims of dubious merit in order to exact large settlement recoveries." <u>In re Prestige Brands Holding, Inc.</u>, 2006 WL 2147719 at *5.

Consequently, since the Complaint fails to satisfy the basic requirements of the Federal Rules of Civil Procedure and the PSLRA, the Court should dismiss plaintiff's claims against all defendants.

## II. PLAINTIFFS HAVE NOT SHOWN SUFFICIENT SCIENTER AS TO MULLARKEY.

The PSLRA also requires that a plaintiff plead scienter with a high degree of particularity:

> In any private action arising under this title in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with

>respect to each act or omission alleged to violate this title, state
>with particularity facts giving rise to a strong inference that the
>defendant acted with the required state of mind.

15 U.S.C.S. § 78u-4(b)(1) (2006). Plaintiffs' conclusory and nonspecific scienter allegations contained in Complaint, ¶¶ 26-29, are insufficient to plead scienter against Mullarkey.

As this Court summarized the law in In re Oxford Health Plans, Inc. Securities Litigation, 51 F. Supp.2d 290, 293-294 (S.D.N.Y. 1999):

>To state a prima facie case under the Securities Exchange Act of 1934 § 10(b), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, plaintiffs must allege: (1) a misrepresentation or omission; (2) of material fact; (3) made with scienter; (4) upon which plaintiffs relied; and (5) which proximately caused plaintiff's injuries. Acito v. IMCERA Group, Inc., 47 F.3d 47, 52 (2d Cir. 1995). Proper pleading of the scienter element under Rule 9(b) and the PSLRA requires that the plaintiffs "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). Our Court of Appeals has interpreted this to require the plaintiff either (1) to allege facts that show the defendant had both motive and opportunity to commit fraud, or (2) to allege facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. Press v. Chemical Investment Services, Corp., 166 F.3d 529, 537-38 (2d Cir. 1999).[2]

Here, the Complaint fails to satisfy neither prong of the scienter pleading requirement.

---

[2] As this Court in Prestige quoted the decision of the United States Court of Appeals for the Second Circuit in Ganino v. Citizens Utils. Co., 228 F.3d 154, 168-69 (2d Cir. 2000):

>The requisite state of mind in a Rule 10b-5 action is an intent to deceive, manipulate or defraud. Such intent can be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. Although speculation and conclusory allegations will not suffice, neither do we require great specificity provided the plaintiff alleges enough facts to support a strong inference of fraudulent intent.

2006 WL 2147719 at *5 (internal quotations and citations omitted).

### A.  **Plaintiffs Have Failed To Allege Motive And Opportunity.**

To plead the required "strong inference" that a defendant acted with scienter, a plaintiff may allege both motive and opportunity to support fraud. Chill v. General Electric Co., 101 F.3d 263, 268 (2d Cir. 1996); Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1130 (2d Cir. 1994). The Second Circuit describes the motive and opportunity prong of the scienter requirement as follows:

> Motive would entail concrete benefits that could be realized by one or more of the false statements and wrongful, nondisclosures alleged. Opportunity would entail the means and likely prospect of achieving concrete benefits by the means alleged.

Shields, 25 F.3d at 1130.

Reliance on "conjecture and surmise" is insufficient to support an inference of fraud and to withstand a motion to dismiss. See, e.g., Kalnit v. Eichler, 264 F.3d 131, 140 (2d Cir. 2001) ("speculative and conclusory" allegations of motive do not raise an inference of fraud). Plaintiffs must plead a "particularized motive to commit fraud, one tied to specific circumstances" rather than relying on "inferentially ambiguous" facts to satisfy the burden. See In re Acterna Corporation Securities Litigation, 378 F. Supp.2d 561, 583 (D. Md. 2005); In re MicroStrategy, Inc. Securities Litigation, 115 F. Supp.2d 620, 643 (E.D. Va. 2000). Moreover, "neutral facts," such as violations of accounting standards and overstatements of sales, without more, do not permit an inference of scienter. See In re Jiffy Lube Securities Litigation, 772 F. Supp. 258, 262 (D. Md. 1991).[3]

---

[3] The Second Circuit has repeatedly held that allegations of purported violations of GAAP, without well-pleaded allegations of corresponding fraudulent intent, are not sufficient to demonstrate fraud. See Chill, 101 F.3d at 270. Instead, plaintiffs are required to plead facts demonstrating that the deviations from accounting and internal control standards were the result of fraudulent intent. Id. at 270. The district courts in this Circuit have reinforced the Chill holding in more recent opinions. See In re Hudson Technologies, Inc. Securities Litigation, No. 98-1616, 1999 WL 767418, *5 (S.D.N.Y. Sept. 28, 1999) ("[t]he failure to comply with standard accounting practices, coupled with later revisions of financial statements, does not alone constitute circumstantial evidence of misconduct or recklessness"); OSRecovery Inc. v. One

The Court of Appeals for the Second Circuit has rejected generalized theories of tainted motive, underlying what is otherwise ordinary conduct, as sufficient to support an inference of fraud.  The Court has recognized that it is always possible to ascribe fraud by reason of such motives as retaining employment or the perks of corporate office, increasing incentive compensation, or enhancing the value of the stock owned by executives; this would prove too much.

In Novak v. Kasaks, 216 F.3d 300, 307-08 (2d Cir. 2000), the United States Court of Appeals for the Second Circuit stated:

> Plaintiffs could not proceed based on motives possessed by virtually all corporate insiders, including:  (1) the desire to maintain a high corporate credit rating, or otherwise sustain the appearance of corporate profitability, or of the success of an investment, and (2) the desire to maintain a high stock price in order to increase executive compensation, or prolong the benefits of holding corporate office.  Rather, plaintiffs had to allege that defendants benefited in some concrete and personal way from the purported fraud.

(citations and internal quotation marks omitted).[4]

Here, all that is alleged that Mullarkey "had a motive to mislead Plaintiffs" because Workstream sought to acquire ProAct and allegedly needed the money.  Complaint, ¶ 28.  There are no benefits alleged by Plaintiffs to have accrued to Mullarkey, e.g. any allegation that he divested himself of stock in the interim or had any tenable motive to capture a

---

Groupe International, Inc., 229 F.R.D. 456, 458 n.14 (S.D.N.Y. 2005) (citing Chill, supra); see also, In re Corning Securities Litigation, No. 01-6580, 2004 WL 1056063, at *30 (W.D.N.Y. Apr. 9, 2004) ("allegations of a serious departure from GAAP are not by themselves sufficient to give rise to an inference of scienter").

[4]    See also, Kalnit, 264 F.3d at 139 ("such motive allegations . . . [are] common to all corporate executives and, thus, too generalized to demonstrate scienter"); Tuchman v. DSC Communications Corporation, 14 F.3d 1061, 1068 (5th Cir. 1994); Ferber v. Travelers Corp., 785 F. Supp. 1101, 1107 (D. Conn. 1991), *reconsideration & leave to amend granted,* 1992 WL 34683 (D. Conn. 1992); see In re First Chicago Corp. Sec. Litig., 769 F. Supp. 1444, 1455 (N.D. Ill. 1991), compl. dismissed 789 F. Supp. 919 (N.D. Ill. 1992); Brogen v. Pohlad, 933 F. Supp. 793, 803-804 (D. Minn. 1995).

- 8 -

personal benefit.  The Complaint simply does not allege a single fact to support any benefit that accrued to Mullarkey from the conduct apart from the business success of the company where he served as CEO.  This is a neutral fact representing ordinary conduct; the same could be said about any company and any chief executive.

For these reasons, the fraud claims should be dismissed against Mullarkey.

### B. There Are No Allegations Sufficient To Constitute Strong Circumstantial Evidence Of Conscious Misbehavior Or Recklessness.

On the other hand, there are no allegations which constitute "strong circumstantial evidence of conscious misbehavior or recklessness."  The Complaint admits others were in discussions, and never alleges that absent the money of Plaintiffs the company could not close the ProAct deal.  All it says is that if Plaintiffs did not agree to invest, this "would make it difficult if not impossible for Workstream to close on its acquisition of ProAct or make future acquisitions."  ¶ 28.  At the same time, the Complaint acknowledges that Workstream was also negotiating with other private sources of financing.  Complaint, ¶¶ 12, 14, 28.  In fact, the Court may take judicial notice of Workstream having raised $10 million in the private placement in which Plaintiffs participated, exclusive of any money raised from Plaintiffs or related entities, and that the cash payment to acquire ProAct was only half that amount.[5]

Thus, there can be no strong circumstantial evidence of conscious misbehavior or recklessness is pleaded.  There is only the vague and conclusory allegation about future acquisitions -- not even that this deal would be prevented, but that it might impact other deals at some indeterminate time in the future.  Surely, the circumstantial evidence, if not nonexistent, is at best equivocal.

---

[5] See Kramer v. Time Warner Inc., 937 F.2d 767, 773-74 (2d Cir. 1991) (holding that, in considering a Rule 12(b)(6) motion to dismiss, a court may properly take judicial notice of "public disclosure documents required by law to be filed, and actually filed, with the SEC").

- 9 -

Consequently, the Complaint should be dismissed as to Mullarkey on the basis of the failure to plead scienter with requisite particularity.

### III. SUPPLEMENTAL JURISDICTION DOES NOT EXIST TO LITIGATE THE COMMON LAW CLAIMS.

Supplemental jurisdiction is codified by 28 U.S.C. § 1367. That statute provides:

> "[i]n any civil action of which the district courts shall have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

Simply put, the court has no original jurisdiction over the federal securities law claims, thus, the Court cannot have supplemental jurisdiction.

It is well settled that when federal claims are dismissed at the outset of a case, it would be improper for a federal court to exercise supplemental jurisdiction over state law claims involving the same facts. *See* Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305-08 (2d Cir. 2003) (holding that the district court abused its discretion in retaining supplemental jurisdiction over state law claims after the plaintiffs abandoned their federal claims). As the United States Supreme Court noted in Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988):

> [I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.

Id. (*citing* United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) for the general rule that "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well"); *see also* Giordano v. City of New York, 274 F.3d 740, 754 (2d Cir. 2001); Oliveira v. Frito-Lay, Inc., 251 F.3d 56, 64 (2d Cir. 2001). Simply put, the Court has no jurisdiction over the federal claims, depriving it of a basis to exercise supplemental jurisdiction.

As set forth above, Plaintiffs have utterly failed to meet the pleading requirements of the PSLRA and the Federal Rules of Civil Procedure, and therefore the federal claims should be dismissed.  Accordingly, supplemental jurisdiction is inappropriate for the claims under New York common law, and they should also be dismissed for lack of jurisdiction.

## **CONCLUSION**

For the reasons stated above, the Complaint should be dismissed against all defendants in its entirety.

Dated: May 1, 2007

        LAW OFFICES OF GARY LESHKO

        By:    /s/
            Gary L. Leshko (GL - 4146)
            One North Lexington Avenue
            15th Floor
            White Plains, NY 10601
            (914) 948-6000

            Attorneys for Defendant,
            Workstream, Inc.

COZEN O'CONNOR

        By:    /s/
            H. Robert Fiebach (HF-5456)
            David M. Doret (DD - 2949)
            COZEN O'CONNOR
            1900 Market Street
            Philadelphia, PA 19103
            (215) 665-2000

        By:    /s/
            Edward Hayum (EH 8434)
            45 Broadway Atrium
            New York, NY 10006
            (212) 509-9400

            Attorneys for Defendant,
            Michael Mullarkey

PHILADELPHIA\3129056\1 202998.000